UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA

FILED
12/10/2025
Clerk, U.S. District Court
District of Montana
Billings Division

NATALIE A. MATHER,
1370 N. 7th Ave.,
Bozeman, MT 59715,
Plaintiff,

vs.

CITY OF BOZEMAN LIBRARY, a City entity, and, INVICTUS SECURITY GROUP, INC., a Montana Corporation, 626 E. Main Street., Bozeman, MT 59715, and, 2887 Jackrabbit Lane, Bozeman, MT 59715, Severally,
Defendant(S).

CIVIL COMPLAINT FOR VIOLATIONS UNDER THE AMERICAN WITH DISABILITIES ACT.

CV-25-146-BLG-TJC

CIVIL COMPLAINT

Comes now the plaintiff in the above styled action and does show for complaint as follows:

1. This is an action sustained by, NATALIE A. MATHER, hereinafter, plaintiff MATHER, and sues the defendant's severally, CITY OF BOZEMAN LIBRARY, a city entity, and, INVICTUS SECURITY GROUP, INC., a Montana corporation, alleging:

(A) Violation of civil rights.

(B) Interference with the American Disabilities Act.

NATURE OF THE CASE

2. This is in fact a federal civil rights suit brought pursuant to 42 U.S.C. § 1983, in part, and in furtherance claims of severe interference under the federally protected American with Disability Act.

3. specificaLLy, the interf-erence arose upon such time at which a security guard contract officer in fact unlawfully dictated to MATHER, a seizure patient that her K-9 / dog was in fact not allowed within the confines of the city of Bozeman Library, however, the Libraries security officer's direct advance was nothing less than pre-mature where pursuant to the legal threshold under the mandates of the American with Disabilities Act, where the Law requires secured by a narrowly tailored Legislation that any; (A) business, city, County, or state entity, such as the governance of the city of Bozeman public Library entity may ask or inquire with a patron solely two isolated question's as such; (B) is the animal present a service animal at which performs a specific task, and, (C) what

concise duties does the service animal provide?

(4) secured pursuant to the American with Disabilities Act, any such entity is in fact lawfully prohibited from even so much as demanding any certification and or documentation disclosing that the animal present is in fact a certified service animal!

PARTIES

(5) Plaintiff MATHER is a previous and current patron of the City of Bozeman public Library, and is an ongoing medical seizure patient of the Neurology specialty clinic within the Bozeman Deaconess medical center, and is in fact medically prescribed a seizure alertation dog, (Apache), where this concise K-9 is in fact a certified service animal!!! Under the ("ADA"), a licensed

Service animal is clearly not defined as a pet and may not be treated with any such indifference, especially at the hands of a city governmental entity such as here the city of Bozeman Library system upon which is held to higher legal standards and such local governed entity obtains much more quality training than a general principal place of business such as a privately owned store!

(6) Government defendant, the city of Bozeman Library is in fact a local city government owned entity, and employ's Invictus security Group for the primary purposes of providing security services for the city of Bozeman public library!

(7) Defendant, INVICTUS SECURITY GROUP, INC., is in fact a private security contract corporation at which is hired under contract by the city of Bozeman public library system, and is charged by library policy in which to comply with and to enforce all library protocol and policie's, one of which are the firm and non flexible mandates under the American with Disabilites Act! In light of the "ADA" legislation, there is in fact no room or latitude for discretion or personal opinion!

JURISDICTION AND VENUE

(8) This federal court obtains subject matter jurisdiction over this concise case pursuant 42 U.S.C. § 1983, a federal civil rights suit upon a city government entity!

(9) corporate defendant's, INVICTUS SECURITY GROUP, INC., despite not existing as government entity liable under 1983, is still yet liable under the widespread mandates of the American with Disabilities Act and is in fact lawfully obligated in which to remain in 100% compliance with the federally protected American with Disability Act, and in furtherance is in fact legally obligated in which to competently train all of its Security officer's as to the firm and non flexible rules secured under the American with Disabilities Act, specifically the service animal requirements!

(10) Plaintiff - NATALIE A. MATHER, is a citizen and a resident of solely the State of Montana, and resided within the confines of the State of Montana at all times material to

this action.

(11) The amount in dispute is in excess of, $75,000.

(12) Venue is proper in the District of Montana because each event giving rise to this action accrued in the District of Montana. 28 U.S.C. § 1391.

(13) Government defendant's, the city of Bozeman Library is in fact a local city government entity, is charged by statute in which to remain in 100% compliance with the service animal mandates secured pursuant to the American with Disabilities Act, and is liable under 42 U.S.C. § 1983.

FACTUAL BACKGROUND

(14) on concisely saturday, November, 22th, 2025, plaintiff MATHER was in fact sitting within the city of Bozeman Library upon such time at which a uniformed security officer with the Invictus security group approached her and right away engaged into an unlawful act of ("interference") with plaintiff MATHER'S guaranteed rights secured pursuant to the federally protected American with Disabilities Act, service animal mandates, where this library security officer in fact most prematurely based a direct statement to MATHER, his unlawful quote that dog's were not permitted within the library facility, however, Library policy is to in fact first make question to the attending patron as to if the present animal is in

fact a service animal or not! secured by law, the libraries security officer should have clearly asked MATHER solely two questions as is described also within the above paragraph numer--ation #3, (B) and (c), is the animal present a service animal, and what concise service and dutie's does the animal provide! Instead the security officer jumped the gun so to speak, and quoted to MATHER without following library protocol dog's are not allowed within the library, here according to the American with Disabilities Act, and in furtherance, this same library security officer demanded that MATHER promptly produce service animal documentation for her service animal arising into nothingless than discrimin--ation as is in fact prohibited by the ("A.D.A.")!!!

(15) Promptly, upon the Security officer's demand for service animal documentation addressed to MATHER, MATHER in her well knowing of the firm and non flexible American with Disability Legislation was in fact most shocked and surprised here alone MATHER immediately suffered distress and an emotional hardship as to her seizure alertation dog, (a medically prescribed service animal), sustaining interference by a trusted and supposed competent and trained security officer serving and working within the confines of a ("City government Library System"),

(16) No end came to the security officer's predicated acts, as he was in fact most overly controlling and as to his attitude here, he was in fact going to prevail despite the fact that he had already acted in sincere error and in furtherance, the security officer directed MATHER to depart the public library in his unlawful alternative given to MATHER, in any event at which MATHER would continue to refuse to provide the officer with verifiable documentation for the service animal, which here such action is in fact severely unlawful and infringes upon the A.D.A. (solely two isolated question's may be asked as is defined above!

(17) Mrs. Rhonda Taylor with the A.D.A. and civil rights Division with the U.S. Department of Justice in Washington has in fact made most clear to MATHER that the concise service animal mandates secured by the American with Disabilities Act is in fact clearly narrowly tailored and leaves no room for discretion modification, or personal opinion by any government entity or even a private business!

(18) supported by these declared and material facts articulated above, nothing less than a plausible showing of ("interference") here arises and in as so far, these claims even at this stage are plausible upon their face!

(19) Most stunning, this security officer concluded by quoting to MATHER that he was well aware of the legal mandates of the American with Disabilities Act, stated that he did not agree with this law, and concluded by stating to MATHER that to allow her service dog to remain within the library was still yet, at his sole decision and in his own quotes that because he was employed by an outside contracting security company, he could in fact deny attendance of MATHER'S service animal and as a private security company he was not legally obligated in which to comply with any federal mandates, which is so in error!!!

(20) Here above, a clear showing of this specific defendant as to concisely how defendant's, Invictus security group is involved, and further what specifically this defendant did or did not do contributing to violating MATHER'S clear rights secured under the American with Disabilities Act, concluded by a showing here how this specific defendant is in fact liable for the misconduct alleged!

(21) within paragraph's 16-18, and 19, clearly establishes that defendant's, Invictus security group and its security officer acted with clear knowing and intent and intentionally ignored the federally protected American with Disabilities Act and is liable as such!

officer, a librarian with the city of Bozeman Library also approached MATHER, and again directly started to repremand MATHER without initially inquiring with MATHER as to first; (a) if the dog was in fact a service animal or not, and; (b) what concise duties does the service animal provide!

(24) MATHER promptly attempted to defend her liberties under the American with Disabil-ities Act in noting to the librarian that initially she/the librarian should have in fact inquired as to if the dog was in fact a service animal or not!

(25) Even within the confines of a city government entity, its staffing personnel is in fact legally obligated in which to 100% comply with all mandates governed by the American with

Disabilities Act despite personal opinion or discretion and for a government entity to avoid any liability for interfer-ence or discrimination!!!

(26) Pursuant to an act of discrimination upon a mere public library patron, this same librarian did in fact demand for MATHER to in furtherance show and produce; (a) service animal documentation, not limited to; (b) her most shocking demand for MATHER to also disclose to the librarian medical record's establishing that MATHER in fact obtains a seizure disorder! Both of which are most unlawful!

(27) The violating librarian of the city of Bozeman Library quoted to MATHER that she/the librarian was in need of determining that MATHER's medical

condition met the threshold for a service animal!

(28) City of Bozeman Library director, Susan Gregory had long prior and upon a continuous pattern dictated to each and every one of her librarian staff that library personnel or hired security personnel was in fact lawfully, and by library policy prohibited from so much as even interfering with a patron within the Bozeman Library whom which is merely sitting within the library accompanied by a service animal, the patron merely reading or writing as long as the animal was clearly not creating any nuisance or imposing any threat towards other attending patrons!

¶129) Mrs. Gregory, the Bozeman Library director further made most clear to each Librarian and to all contracted security personnel including the Libraries hired Invictus security group that each of them are in fact clearly prohibited from so much as asking the service animal patron for proof or verification or to produce any documentation in support that the K-9 present is in fact a registered service animal, however, during the above defined event, the Invictus security officer did in fact severely interfere and most unlawfully demanded from MATHER that she in fact promptly produce documentation of her attending service and seizure alertation dog!

(30) In conclusion to both event's, jointly and together, the security officer and the interfering librarian both directed MATHER to promptly depart the library and to refrain from returning with her service animal during any point and time in result of MATHER merely refusing, and explaining to both partie's that pursuant to the firm and non-flexible American with Disabilitie's legislation, they were prohibited from demanding such documentation!

(31) Library Director, Susan Gregory is clearly not named as a subject matter defendant in this case merely because of her supervisory capacity, and in furtherance because Gregory has not engaged into any misconduct at which would hold her liable for suit!

(32) In conclusion, this civil complaint is in fact so plausible upon its face where MATHER has in fact shown and clearly established what concisely defendant's did or did not do, how they are in fact liable for the misconduct alleged!

(33) MATHER has in furtherance pleaded factual content and factual matter, and has stated plausible claims upon which this court may draw a reasonable inference that both defendant's are in fact liable for the misconduct alleged!

(34) A Library report was in fact taken by a non-conflicting Librarian, where the violating INVICTUS security office very clearly admitted to on duty Library personell that he did in fact engage into a severe mistake in unlawfully demanding that MATHER produce verifiable documentation as

to her present service animal! Here clearly, a civil jury demand would not be necessary in this specific case!

(35) MATHER has in furtherance sustained injury where it was in fact five (5) consecutive day's until a supervisory librarian in fact took corrective action and in furtherance permitted MATHER to return her attendance to the city of Bozeman Library also admitted that the libraries hired security officer had in fact engaged into a sincere mistake and that MATHER was wrongfully removed from the Bozeman Library!!!

INJURY

(36) Initially and first, MATHER has in fact suffered emotional distress and severe mental anguish as to her service animal's presence being interfered with and even further severely violated at the hands of a trusted city government library and its educated librarian, including being severely violated by a professional security service, both of which should obtain the obvious required training as to such of a firm and non-flexible federal legislation within both of their held to high standards in their professional capacities!

(37) In furtherance, MATHER in fact suffered an unreasonable window of time of five (5) consecutive day's of her unlawfully forced absence from her entitled and of her habitual every day attendance

to the city of Bozeman Library, solely caused, brought upon, condoned and ratified by both named defendant's, here clearly liable for MATHER'S initial shock of being violated by trusted personell and removed from a public place because of the attendance of her service dog!

CLAIM ONE

(38) The federally protected American with Disabilities Act prohibits any principal place of business, public Library, and or any local city, county, or state government entity from so much as even demanding a patron to produce verifiable service animal documentation!

CLAIM TWO

(39) In furtherance, a Library contracted security officer has in fact violated MATHER'S Legislative Liberty in which

to possess her medically prescribed service animal secured pursuant to the American with Disabilities Act!

CLAIM THREE

(40) An official and professionally trained Librarian employed at the hands of a city entity imposed also a severe infrinjement upon MATHER in the Librarian's most unlawfully; (a) demanding service animal documentation, and in furtherance; (b) revoking MATHER's library attendance accompanied by her trained seizure alartation dog at the sole and isolated cause of MATHER's refusal in which to submit service animal documentation, both of which are severely unlawful and clearly violate the American with disabilities Act!

CLAIM FOUR

141) Pursuant to firm federal Legislation, any citizen and or service animal holder clearly cannot be penalized or sanctioned to depart for the purposes of exercising a right guaranteed by Law, here such of a right secured pursuant to the American with disabilities Act!!!

CLAIM FIVE

142) Here, MATHER has in fact been severely penalized by both defendant's primarily for the sole and only purpose of asserting her Lawful rights secured pursuant to the American with disabilities Act!

# RELIEF

WHEREFORE, upon the premises considered it is most respectfully upon this Honorable Court for the entry of an order as follows:

(A) Find this civil complaint to obtain facial plausibility!

(B) Find that plaintiff has in fact alleged factual matter and factual content upon which relief may in fact be granted!

(C) Award plaintiff with monetary awards for emotional distress and of her unreasonable suffering as to defendant's unlawful actions as is verifiable during a trial by judge in defendant's admittance of the federal violations secured under the American with disabilities Act!!! $185.00.

(D) Grant plaintiff with an actual trial by solely the presiding judge, or by the United States Magistrate Judge, and non-jury trial for this specific nature of case.

(E) Promptly direct service of process upon defendant's pursuant to a rule (4) waiver of service of summons.

I Declare under penalty of perjury the foregoing to be true and correct.

Signed this, 7th, Day of December, 2025.

Natalie R. Mather
(SIGNATURE OF PLAINTIFF)